UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jeffrey Horebe | : | |
| c/o Piontek Law Office | : | |
| 58 East Front Street | : | |
| Danville, PA  17821 | : | 23-cv-01701 |
| Plaintiff | : | |
| v. | : | |
| IQ Data International, INC. | : | |
| 21222 30th Drive | : | |
| Suite 120 | : | |
| Bothell, WA  98021 | : | |
| and | : | |
| JOHN DOES 1-10 | : | |
| and | : | |
| X,Y,Z CORPORATIONS | : | Jury Trial Demanded |
| Defendants | : | |

# <u>FIRST AMENDED COMPLAINT</u>

## INTRODUCTION

1.  This is an action for damages brought by an individual consumer for Defendant's alleged

    violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq. ("FDCPA")

    as well as well as for Defendant's alleged violations of the Fair Credit Reporting Act, 15

    U.S.C. 1681, et seq. ("FCRA").

2.  Plaintiff is Jeffrey Horebe, an adult individual with a current mailing address for purposes

    of this litigation of c/o Piontek Law Office, 58 East Front Street, Danville, PA  17821.

3.  Defendant is IQ Data International, INC., a business entity with a principal place of

    business located at 21222 30th Drive, Suite 120, Bothell, WA  98021.

4.  Defendants my also include John Does 1-10 and XYZ Corporations, persons or entities liable for the commission of the acts or omissions described in this Complaint whose identities are not yet know but which may become known through discovery.

5.  Venue is proper in this jurisdiction because a substantial about of the transaction or occurrences happened in or near this jurisdiction.

6.  Venue is proper in this jurisdiction because key witnesses may be located in or near this jurisdiction.

**FACTS**

7.  At all times mentioned in this Complaint. Defendant was attempting to collect on an alleged consumer debt against Plaintiff for a residential lease which was for Plaintiff's personal use.  According to Defendant's records the leased property was managed by INTERNATIONAL CITY HOLDINGS, the original alleged creditor whom Defendant represented for collection purposes.  However, it is not known to Plaintiff if that information about the named original creditor is correct.

8.  Prior to the commencement of this action, Defendant IQ Data International, Inc. placed derogatory information on Plaintiff's consumer reports(s) for the aforementioned residential rental account.  An alleged balance was reported to Transunion, Equifax and Experian, three major consumer reporting agencies.

9.  At all times mentioned in this complaint Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Transunion, LLC

("Transunion") were  "consumer reporting agencies" as contemplated by the Fair Credit Reporting Act, 15 USC 1681 et. seq. as well as the Fair Debt Collection Practices Act, 15 USC 1692 et. seq.

10. On or about May 9, 2022, Defendant IQ Data International, Inc. sent Plaintiff a collection letter for the aforementioned residential rental account.

11. The derogatory balance reported to the consumer reporting agencies and the balance included in the collection latter dated May 9, 2022, included the following charges.

    a.    Interest which grew periodically.

    b.    "Cleaning charge" of $35.

    c.    "Late fee" of $75.

    d.    "Move Out" charge of $30

12. In addition to sending the above referenced collection letter, Defendant also reported a balance to Experian, Equifax and / or Transunion that included the above reference charges.

13. Plaintiff never agreed to pay the original alleged creditor any interest associated with the account.  There was no contractual basis  whereby Plaintiff agreed to pay any interest to the original alleged creditor.

14. At all times mentioned in this complaint Defendant knew or should have known that Plaintiff never agreed to pay the original alleged creditor any interest associated with the account, and that there was no contractual basis  whereby Plaintiff agreed to pay any interest to the original alleged creditor

15. Plaintiff never agreed to pay Defendant any "cleaning charge" of $35.  There was no contractual basis whereby Plaintiff agreed to pay the original creditor any cleaning charge.

16. At all times mentioned in this complaint Defendant knew or should have known that Plaintiff never agreed to pay Defendant any "cleaning charge" of $35, and that there was no contractual basis whereby Plaintiff agreed to pay the original creditor any cleaning charge.

17. Plaintiff never agreed to pay the original creditor a "late fee" of $75.

18. At all times mentioned in this complaint Defendant knew or should have known that the alleged late fee of $75 was not supported by any contract between Plaintiff and the original alleged creditor.


**COUNT ONE: Violation of Fair Debt Collection Practices Act
15 USC 1692 et. seq.
Illegal Imposition of Pre-Judgment Interest**


19. The previous paragraphs of this complaint are incorporated by reference and made a part of this complaint.

20. At all times mentioned in this Complaint, Plaintiff was a consumer debtor as defined by the Fair Debt Collections Practices Act (FDCPA), 15 USC 1692 et. Seq.

21. At all times mentioned in this Complaint Defendant was is a debt collector as defined by the FDCPA, 15 USC 1692 et. seq.

22. The alleged debt that Defendant was attempting to collect from Plaintiff was for a past lease for Plaintiff's personal residential lease.

23. Pennsylvania law is well settled in the fact that pre-judgment interest is only warranted on a contract for a sum certain amount of money.  See Cresci Construction v. Martin, 64 A.3d 254 ; 2013 PA Super 66 (2013).

24. The alleged balance which is the subject matter of this case was not a contract for a sum certain amount of money.

25. Plaintiff neither agreed to nor consented to any interest being charged on the aforementioned account related to the residential lease that Defendant was attempting to collect on.

26. Defendant's May 9, 2022 letter to Plaintiff attempted to enforce a right to interest which had no basis in law or fact.  Defendant knew or should have had reason to know that no such right of interest existed at the time the letter was sent.

27. When Defendant reported the alleged balance which included such purported interest to Experian, Equifax  and Transunion, Defendant attempted to enforce a right to interest which had no basis in law or fact.  Defendant knew or should have had reason to know that no such right of interest existed.

28. By claiming interest in the May 9, 2022 letter Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any collection fee unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

**29.** By claiming interest in the May 9, 2022 letter  Defendant violated 15 USC 1692e of the FDCPA  which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

30. By reporting false information about an alleged balance which included false interest to Experian, Equifax and / or Transunion, Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any collection fee unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

**31.** By reporting false information about an alleged balance which included false interest to Experian, Equifax and / or Transunion,  Defendant violated 15 USC 1692e of the FDCPA which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

**COUNT TWO: Violation of Fair Debt Collection Practices Act**
**15 USC 1692 et. seq.**
**Illegal Imposition of a "Cleaning Charge"**

32. The previous paragraphs of this complaint are incorporated by reference and made a part of this Complaint.

33. Plaintiff never agreed to pay Defendant any "cleaning charge" of $35.

34. At all times mentioned in this complaint Defendant knew or should have known that the "cleaning charge"  was not supported by any contract.

35. At all times mentioned in this complaint Defendant knew or should have known that the "cleaning charge"  had no legal basis.

36. At all times mentioned in this complaint Defendant knew or should have known that Plaintiff never agreed to pay the "cleaning charge".

37. By imposing the "cleaning charge" in the May 9, 2022 letter, Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any additional fee added onto the principal balance unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

38. By imposing the "cleaning charge" in the May 9, 2022 letter, Defendant violated15 USC 1692e of the FDCPA  which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

39. By reporting the alleged balance which included an "cleaning charge" to one or more consumer reporting agencies, Defendant violated 15 USC 1692e of the FDCPA which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

40. By reporting the alleged balance which included an "cleaning charge" to one or more consumer reporting agencies, Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any additional fee added onto the principal balance unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

**COUNT THREE: Violation of Fair Debt Collection Practices Act**
**15 USC 1692 et. seq.**
**Illegal Imposition of a $75 "Late Fee"**

41. The previous paragraphs of this complaint are incorporated by reference and made a part of this Complaint.

42. Plaintiff never agreed to pay the original creditor a "late fee" of $75.

43. At all times mentioned in this complaint Defendant knew or should have known that the alleged late fee was not supported by any contract.

44. At all times mentioned in this complaint Defendant knew or should have known that the alleged late fee had no legal basis.

45. At all times mentioned in this complaint Defendant knew or should have known that Plaintiff never agreed to pay the late fee of $75.  Although the governing contract may have mentioned a late fee, it was so poorly worded and ambiguous that it failed to state the amount of the late fee, thus nullifying any meaning or effect of the late fee provision.

46. By imposing the "late fee" in the May 9, 2022 letter, Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any additional fee added onto the principal balance unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

47. By imposing the "late fee" in the May 9, 2022 letter, Defendant violated15 USC 1692e of the FDCPA  which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

48. By reporting the alleged balance which included an "late fee" of $75 to one or more consumer reporting agencies, Defendant violated 15 USC 1692e of the FDCPA  which prohibits any false and misleading statement about the character, nature or amount of an alleged debt.

49. By reporting the alleged balance which included an "late fee" to one or more consumer reporting agencies, Defendant violated 15 USC 1692(f)(1) of the FDCPA which prohibits the addition of any additional fee added onto the principal balance unless such collection fee is specifically agreed to by the consumer or unless authorized by applicable law.

## COUNT FOUR: VIOLATION OF THE FAIR
## CREDIT REPORTING ACT, 15 USC 1681 ET SEQ

50. The previous paragraphs of this complaint are incorporated by reference and made a part of this Complaint.

51. At all times mentioned within this Complaint Equifax Information Services, LLC (hereinafter sometimes referred to as "Equifax") was a consumer reporting agency as defined by 15 USC 1681a of the Fair Credit Reporting Act.

52. At all times mentioned in this Complaint Defendant was a furnisher as that term is defined by 15 USC 1681a, 15 USC 1681b and 15 USC 1681s-2 of the FCRA.

53. Prior to the filing this case, Plaintiff incurred an alleged debt with INTERNATIONAL CITY HOLDINGS or their business affiliate.  According to Defendant, INTERNATIONAL CITY HOLDINGS was the original creditor for the account.

54. The alleged debt was assigned by INTERNATIONAL CITY HOLDINGS to Defendant for collection purposes.

55. Plaintiff wrote to Defendant and disputed the account.  The basis of Plaintiff's dispute was whether the alleged balance was supported by a governing contract and / or statements related to the account.

56. Defendant received Plaintiff's written disputes depicted in the attached exhibits to this Complaint.

57. Defendant even wrote back to Plaintiff and supplied documentation.  But the documentation provided did not resolve the dispute.

58. Defendant did not supply a contractual basis for the alleged balance.

59. Plaintiff did not provide statement or business records supporting the alleged balance.

60. Defendant did not make appropriate corrections to Plaintiffs Experian, Equifax or Transunion consumer reports.

61. Plaintiff then disputed the account to Experian, Equifax and Transunion.

62. Experian purported to have conducted an investigation into Plaintiff's dispute.  In so doin Experian contracted Defendant about Plaintiff's dispute.   Defendant then verified the disputed account information to Experian.

63. Upon information and belief Equifax and Transunion also purported to have conducted investigation about the dispute account. In so doing Equifax and Transunion contacted Defendant about the dispute.  Upon information and belief, Defendant also verified the account information to Equifax and Transunion.

64. After Defendant verified the disputed information to one or more consumer reporting agencies, one or more potential creditors, leasors, and / or insurers saw Plaintiff's consumer report that contained the false inaccurate account information.

65. Pursuant to 15 USC 1681s-2 et. seq., Defendant was required to update Plaintiff's consumer to correct and remove false information.

66. After Defendant verified the disputed information to Experian (and possibly Equifax and Transunion) no consumers reports issued about Plaintiff after that point containing the false ID data international Inc. account were complete or accurate reports.

67. Defendant violated 15 USC 1681s-2 et. seq. by verifying the false to one or more consumer reporting agencies such as Experian and possibly also Equifax and Transunion.

68. Defendant violated 15 USC 1618 S-2 (b) of the FCRA by verifying false and misleading information about interest, a "late fee," a "cleaning charge," one or more of the above named consumer reporting agencies.

69. There is no private cause of action under 15 USC 1681s-2(a) alone.  Only the government can bring a cause of action under 15 USC 11681 s-2(a).  For example, the Attorney General could bring a claim on behalf of consumers under 15 USC 1681s-2(a).

70. But there is a private cause of action under 15 USC 1681s-2(b).  See the following case law which distinguishes between the government right of action under 15 USC 1681s-2(a), and the private cause of action under 15 USC 1681s-2(b).

Marshall v. Swift River Academy, LLC, 2009 WL 1112768 (9th Cir. 2009).
A consumer has no private right of action under FCRA against furnisher merely because the furnisher failed to provide accurate information to consumer reporting agencies.

Beisel v. ABN Ambro Mortgage, Inc., No. 07-2219, 2007 WL2332494, *1 (E.D. Pa. Aug. 10, 2007).
In order to prevail on a FCRA claim Plaintiff "must prove [he] notified a credit reporting agency of the dispute, the credit reporting agency then notified the furnisher of information, and the furnisher of information failed to investigate or rectify the disputed charge.").

Catanzaro v. Experian Information Solutions, Inc., 671 F. Supp.2d 256, 260 (D. Mass. 2009).
Notification by a consumer reporting agency to the furnisher is a prerequisite for furnisher liability under FCRA.

Kaetz v. Chase Manhattan Bank, 2007 WL 1343700, *3 (M.D. Pa. 2006). The Court dismissed Plaintiff's Complaint, but only because Plaintiff failed to allege that he disputed the accuracy of the debt to a credit agency, or that the credit agency thereafter reported dispute to defendant.

71. Because Plaintiff first disputed the account with Defendant, and then disputed the
    account with the credit reporting agency afterwards, and then Defendant verified the
    derogatory information to the consumer reporting agency, Plaintiff does have a private
    cause of action against Defendant under 15 USC 1681 s-2(b).

## LIABILITY

72. All previous paragraphs of this complaint are incorporated by reference and made a part
    of this complaint.

73. Defendant is liable for the acts committed by its agents under the doctrine of respondeat
    superior because Defendant's agents were acting within the scope of their employment
    with Defendant.

## DAMAGES AND HARM SUFFERED BY PLAINTIFF

74. All previous paragraphs of this complaint are incorporated by reference.

75. Plaintiff believed and avers that Plaintiff is entitled to at least $1.00 actual damages,
    including but not limited to phone, fax, stationary, postage, etc.

76. Plaintiff believed and avers that Defendant's actions were willful and / or wanton.

77. Plaintiff believed and avers that Plaintiff is entitled to $1,000.00 statutory damages under
    the FDCPA 15 USC 1692k et. seq., or other amount determined by this Honorable Court.

78. Plaintiff believed and avers that Plaintiff is entitled to $1,000.00 statutory damages under the FCRA, 15 USC 1681n et. seq., or other amount determined by this Honorable Court.

79. Plaintiff suffered emotional distress as the result of the acts committed by Defendant in this complaint.  The value of such emotional distress shall be determined by this Honorable Court.  For purposes of a default judgment Plaintiff believes and avers that the value of such distress is no less than $10,000.00.

80. Plaintiff believes and avers that the actions of Defendant were willful and wanton thus warranting punitive damages under 15 USC 1681n et. seq.

81. Plaintiff avers that the amount of such punitive damages is no less than $9,000.00.

82. Plaintiff suffered a concrete injury when Defendant reported the false derogatory information described in this complaint to one or more consumer reporting agencies, and the consumer reporting agency(ies) then disseminated that information to one or more users of Plaintiff's consumer report(s).

83. Plaintiff suffered a concrete injury after Defendant reported the false derogatory information described in this complaint to one or more consumer reporting agencies because Plaintiff was actively trying to get a mortgage when such derogatory information appeared on Plaintiff's consumer report(s) thus blocking Plaintiff's ability to obtain a mortgage.

84. Plaintiff suffered a concrete injury after Defendant reported the false derogatory information described in this complaint to one or more consumer reporting agencies and

Plaintiff incurred costs for postage to dispute the derogatory information to Defendant and to the relevant consumer reporting agency(ies).  Plaintiff incurred costs of no less than $1.00.

## ATTORNEY FEES

85. All previous paragraphs of this complaint are incorporated by reference and made a part of this complaint.

86. Plaintiff believes and avers that Plaintiff is entitled to reasonable attorney fees for prosecuting this action.

87. Plaintiff believes and avers that the reasonable rate for attorney fees for prosecuting this action is $600.00 per hour, or other rate approved by this Honorable Court.

88. Plaintiff believes and avers that such attorney fees should amount to no less than  $2,500 enumerated below.

a.   Drafting, editing, review and mailing of dispute letters to Defendant         1

b.   Drafting, editing, filing and service of complaint
     and related documents                                                        2

c.   Follow up with Defendant(s) and client                                       2

                                        _____

                                               5 x $600 = $3,000

89. Plaintiff's attorney fees continue to accrue as the case move forward.

**OTHER RELIEF**

90. All previous paragraphs of this complaint are incorporated by reference and made a part of this portion of the complaint.

91. Plaintiff seeks injunctive relief barring further unlawful collection activity.

92. Plaintiff seeks such other relief as this Honorable Court may deem just and proper.

93. Plaintiff seeks the filing fee for prosecuting this action.

94. Plaintiff seeks costs for prosecuting this action.

95. Plaintiff requests / demands a jury trial in this matter

Wherefore, plaintiff demands judgment against defendant in the amount of $24,001.00 enumerated below.

     $1.00 more or less actual damages.

     $1,000.00 statutory damages for Count One through Count Three  (FDCPA)

     $1,000.00 statutory damages for Count Four (FCRA)

     $3,000 attorney fees

     $10,000 emotional distress

     $9,000 punitive damages

     _____

       $24,001.00


/s/ Vicki Piontek          5-12-2023
_____     _____
Vicki Piontek, Esquire         Date
Attorney for Plaintiff
58 East Front Street
Danville, PA  17821
215-290-6444
Fax: 866-408-6735
vicki.piontek@gmail.com

# EXHIBITS

I.Q. DATA INTERNATIONAL, INC.
21222 30TH DRIVE SE #120, BOTHELL WA 98021
MONDAY-FRIDAY 8 A.M. TO 5 P.M. PST
P.O. BOX 340, BOTHELL, WA 98041
TOLL FREE: (888)-248-2509 OR (425)-609-2150 FAX: (425)-609-2104

MAY 9, 2022

PRF
HOREBE,JEFFREY J

Account#: ███████████

RE: Original Creditor: INTERNATIONAL CITY HOLDINGS (P

|  |  |
|---|---|
| Principal Due: | $2633.48 |
| Interest Due: | $392.64 |
| Total Due: | $3026.12 |

Dear JEFFREY J HOREBE

In reference to your recent request, please find enclosed validation of debt you requested with INTERNATIONAL CITY HOLDINGS (P.

Please remit the balance in full of $3026.12 or contact our office to discuss this debt.

Should you have any further questions, please contact the undersigned below.

Sincerely,

Account Representative
888-248-2509

I.Q. Data International, Inc. is not a debt buyer.  We are a third party debt collection agency retained by your former property management company to collect on your outstanding debt.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose. Your outstanding principal balance will accrue interest at a rate of 006.00 percent per annum.

CamScanner

## Tenant Move Out Statement

### International City Holdings LLC
### 7900 Lindbergh Blvd Suite 4400
### Philadelphia, PA 19153

**Tenant: Jeffrey Horebe**
**Address:** ▮▮▮▮▮▮▮

**Unit: V3711**
**Lease Start: 01/05/2019**
**Notice Given: 11/14/2019**

**Move In: 03/05/2017**
**Lease End: 01/04/2020**
**Vacated: 11/14/2019**

| Move Out Details | |
|---|---|
| Date | Description | Amount |
|---|---|---|
| | Balance Brought Forward | -$45.30 |
| 10/4/2019 | Water Bill | $67.82 |
| 10/28/2019 | Rent Charge | $1,160.00 |
| 11/1/2019 | Late Fee | $75.00 |
| 11/8/2019 | Early Termination Fee Charge | $2,320.00 |
| 11/14/2019 | Water Bill Charge | $65.96 |
| 11/18/2019 | Cleaning Charge | $35.00 |
| 11/18/2019 | Damages/Move Out Charge | $30.00 |
| 11/18/2019 | | |

**Balance: $3,708.48**

**Security Deposit: $1,075.00**
**Balance Due: $2,633.48**



CS CamScanner

Exp Date:  03/04/2018

# KORMAN RESIDENTIAL PROPERTIES, INC

## LEASE

This is a residential lease. It is a legally binding contract between the Landlord and each Tenant. Each Tenant should read this lease carefully. This residential lease contains waivers of your rights as a Tenant. Each Tenant should not sign the lease until each Tenant understands all of the agreements in this lease.

### 1.   NAMES OF LANDLORD AND TENANT(S)

Name of the Landlord:          Korman Residential at International City Mews & Villas

Name(s) of the Tenant(s):      Jeffrey Horebe

### 2.   LEASED PREMISES

The leased premises is the place that Landlord agrees to lease to Tenant.

The leased premises is:  7900 Lindbergh Boulevard      Apt. # 3711

                        Philadelphia, PA 19153

### 3.   STARTING AND ENDING DATES OF LEASE AGREEMENT

This lease starts on:              03/05/2017

This lease ends on:                03/04/2018

### 4.   RENT   $1,075.00  each month. Tenant agrees to pay the monthly rent in advance on or before the 1st day of each month. Landlord does not have to ask (make demand upon) Tenant to pay the rent. Tenant agrees to pay rent by first class mail postage prepaid to Korman Residential at International City Mews & Villas
Mail to: 7900 Lindbergh Blvd, Ste 4400, Philadelphia, PA 19153   or such other place specified by Landlord.

PRORATED RENT for_27_ days $936.00

Tenant agrees to pay a late charge of  $75.00  for each month that Tenant does not pay the rent on time.  The Tenant understands that the rent should be mailed before the first day of each month and that the late charge will be due if the rent is not received by Landlord by the fifth day of each month at the address designated. Tenant understands that the period from the first of each month through the fifth of each month is not a grace period, and that rent is due on the first of each month.

There will be a charge of  $50.00  for each returned check as additional rent.

1                                            _____Tenant Initials



5.   **SECURITY DEPOSIT**

Tenant agrees to pay a security deposit of $1,075.00 in the form of a money order or bank check.  Tenant agrees to pay the security deposit to Landlord before the lease starts and before the Landlord gives possession of the leased premises to Tenant.

Landlord can deduct money from the security deposit for any unpaid rent or for any damages caused by Tenant, Tenant's family and Tenant's guests.

After making deductions for damages and unpaid rent, Landlord agrees to send to Tenant any remaining security deposit money if Tenant provides Tenant's forwarding address in writing when Tenant leaves.  Landlord will mail the remaining security deposit money to Tenant no later than 30 days after the lease ends and Tenant leaves.  Landlord also agrees to send to Tenant a written list of damages and amounts of money deducted from the security deposit.

Tenant agrees to give Landlord a written forwarding address when Tenant leaves and the lease ends.

Tenant may not use the security deposit as payment of the last month's rent.  The name and address of the bank in which the Landlord will deposit the security deposit are:

**Firstrust Bank.  15 East Ridge Pike, Conshohocken, PA  19428.**

6.   **LANDLORD'S DUTY AT THE START OF THE LEASE**

Landlord agrees to give Tenant possession of the leased premises on the starting date of the lease. This lease will start even if Landlord cannot give Tenant possession of the leased premises because the prior Tenant is still in the leased premises or the leased premises are damaged.

If Landlord cannot give Tenant possession, Tenant does not have to pay rent until the day Landlord gives possession of the leased premises to Tenant.

7.   **DAMAGE TO LEASED PREMISES**

Tenant agrees to notify Landlord immediately if the leased premises are damaged by fire, or any other cause.  Tenant agrees to notify Landlord if there is any condition in the leased premises that could damage the leased premises or harm Tenant or others.

If the leased premises are damaged by fire or any other cause, not caused by Tenant, Landlord has the sole responsibility to decide whether the leased premises may continue to be occupied by Tenant.  If the Tenant continues to occupy the leased premises there will be no reduction in rent.

The Landlord is not responsible for providing any alternative leased premises if the Tenant vacates.

The Landlord is not responsible for any loss, damage to personal property or other inconvenience to Tenant caused by fire or other casualty.

Tenant understands that insurance coverage for casualty losses to Tenant's property and Tenant liability (responsibility) for injury or damages is the Tenant's responsibility.

8.   **INSURANCE**

Landlord agrees to have insurance on the building where the leased premises is located. Tenant's personal property in the lease premises is not insured by Landlord's insurance. Tenant is responsible for Tenant's personal property that is located in the leased premises.

2

 Tenant Initials

CamScanner

9.    ASSIGNMENTS OR SUBLEASES BY TENANT

Assignment (or assign) is the legal term for a transfer of the lease from the Tenant to another person. This other person then becomes the Landlord's new Tenant and takes over the lease.

Tenant agrees not to transfer (assign) this lease to anyone else.

A sublease is a separate lease between the Tenant and another person who leases all or a part of the leased premises from the Tenant.

Tenant agrees not to lease (sublease) all or any part of the leased premises to anyone else.

Tenant agrees that if Tenant transfers this lease (assigns) or leases all or a part of the leased premises to another (sublease), Tenant has violated this lease.

10.    RESPONSIBILITY FOR DAMAGE TO PROPERTY OR INJURY TO PEOPLE

Landlord is responsible for all damage to property or injury to people caused by Landlord's (or Landlord's representatives') intentional or negligent acts at the leased premises. Tenant is responsible for all damages to the leased premises and injury to people caused by Tenant, Tenant's family or guests.

Tenant agrees that Landlord is not responsible to Tenant, Tenant's family or guests for damage or injury caused by water, snow or ice that comes on the leased premises.

11.    USE OF LEASED PREMISES

Tenant agrees to use the leased premises only as a residence. Tenant agrees to obey all federal, state and local laws and regulations when using the leased premises. Tenant agrees not to store any flammable, hazardous, toxic chemicals or substances, weapons (unless properly licensed) in or around the leased premises.

Tenant agrees not to do any activities in or around the leased premises, which could harm anyone or damage any property.

Tenant agrees that Tenant will not allow more than   1   person/people to occupy the leased premises without the written permission of Landlord.

12.    RULES AND REGULATIONS

Tenant agrees to obey all rules and regulations for the leased premises. If Tenant violates any rules or regulations for the leased premises, Tenant violates this lease.

13.    LANDLORD'S RIGHT TO MORTGAGE THE LEASED PREMISES
        (SUBORDINATION)

Subordinate and subordination are legal terms that mean that this lease does not have any effect upon the rights of the Landlord's mortgage company. In other words, Tenant's rights under this lease are subordinate to Landlord's mortgage company. If Landlord does not make the mortgage payments, the mortgage company may have the right to end the Landlord's ownership of the leased premises.

If the mortgage company sells the leased premises at a mortgage foreclosure sale, the lease may end. Tenant agrees that Landlord has the right to mortgage the leased premises. If Landlord has a mortgage on the leased premises now, or if Landlord gets a mortgage in the future, Tenant agrees that this lease is subordinate to the Landlord's mortgage.

3

 Tenant Initials

 CamScanner

14. **CARE OF LEASED PREMISES**

Tenant is responsible for, and will take good care of, the leased premises and all of the property in and around the leased premises. Tenant agrees to pay for any damage caused by Tenant, Tenant's family and Tenant's guests. Tenant agrees to turn over possession of the leased premises to Landlord when the lease ends.

Tenant must notify Landlord in writing and receive approval prior to the use of wallpaper, painting or fixtures added to the interior of the leased unit. Tenant may not remodel or make any structural changes to the interior or exterior of the leased unit. When this lease terminates, all alterations will become the property of the Landlord.

Tenant may install additional locks on the door of the leased unit, but must notify the Landlord in writing and supply the Landlord with a duplicate key for any locks installed. The additional locks and keys become the property of the Landlord and all additional keys must be submitted to the Landlord when this lease terminates.

15. **LANDLORD'S RIGHT TO ENTER LEASED PREMISES**

Tenant agrees that Landlord and Landlord's representatives have the right to enter the leased premises at reasonable times. Landlord and Landlord's representatives have the right to inspect, to make repairs, to do maintenance and to show the leased premises to others. In the event of any emergency, the Landlord may enter the leased premises without giving the Tenant advance notice.

16. **UTILITY SERVICES**

Landlord and Tenant agree to pay for the charges for utilities and services supplied to the leased premises as shown below as additional rent.

Landlord has the right to turn off temporarily any utility or other service to the leased premises in order to make repairs or do maintenance.

| | |
|---|---|
| Television Cable | Tenant |
| Electricity to premises, Supplied by Electric Co. | Tenant |
| Electricity to premises, Supplied by Landlord - Note | N/A |
| Water Service | Tenant |
| Sewer Service | Tenant |
| Natural Gas | Tenant |
| Fuel Oil | N/A |

17. **GOVERNMENTAL POWER OF EMINENT DOMAIN**

Eminent domain is the legal name for the right of a government such as the state or county or city to take private property for public use. The government must pay fair compensation to anyone who has any right in the property that is taken by the government.

If all or any part of the leased premises (or the building within the leased premises is located) is taken by eminent domain, this lease will end automatically. Landlord and Tenant agree to release each other from any responsibility because leased premises are taken by eminent domain and the lease has ended.

4

_____ Tenant Initials

## 18. VIOLATIONS OF THIS LEASE

When either Landlord or Tenant does not do something that they have agreed to do, it is a violation of this lease.  If Tenant violates this lease, Tenant may lose Tenant's security deposit.  If Tenant violates this lease, Landlord also can sue Tenant for other expenses and may sue to evict Tenant.

This Agreement shall bind, and inure to the benefit of Landlord and Tenants and their respective heirs, successors and assigns.  In the event 'Landlord' or 'Tenants' shall consist of more than one person or entity, the obligations and rights of Landlord and Tenants shall be the joint and several as to all persons or entities identified as 'Landlord' or 'Tenants'.

Tenant violates this lease if Tenant:

1. Fails to pay rent or other charges to Landlord on time.  Or,

2. Leaves (abandons) the leased premises without the Landlord's permission before the end of the lease.  Or,

3. Does not leave the leased premises at the end of the lease.  Or,

4. Does not do all of the things that Tenant agreed to do in this lease.

If Tenant violates the lease, each Tenant agrees to waive notice to quit.  This means that the Landlord may file a complaint in court asking for an order evicting each Tenant from the leased premises without giving each Tenant notice to quit first.  Landlord does not have the right to lock Tenant out of the leased premises (self-help eviction).  The Landlord can only evict Tenant by court action.

The Landlord does not have the right to evict unless a Tenant has violated the agreements in this lease.  Even though each Tenant is waiving notice to quit, each Tenant will have a chance in court to challenge the Landlord's claim for eviction.  If Tenant violates the lease agreement, the Landlord may sue each Tenant in court:

1. To collect overdue rent,utilities, late charges and cost incurred due to damages caused by Tenant's violation of the agreements in the lease.

2. To recover possession of the leased premises (eviction).

3. To collect for unpaid rent until the end of the lease or until another person takes possession of the leased premises as a new Tenant.

Tenant agrees that Landlord may receive attorney's fees as part of a court judgment in a lawsuit against Tenant for violation of the agreements of the lease.

## 19.  CONTINUATION OF THIS LEASE

To end this Lease Agreement at the end of the term, the Landlord or the Tenant must give to the other party at least sixty (60) days written notice before the date the Lease Agreement is over.  On a Month to Month Lease the Landlord or Tenant must give the other party at least thirty (30) days written notice prior to the first day of the final month before the date the Lease Agreement is over.

If the Landlord or Tenant does not give any written notice to the other party to end this Lease Agreement, it will automatically continue for the same term that is set forth in paragraph three (3) above and is subject to a change in the amount of rent.

If Landlord wishes to modify any terms of the original lease, including but not limited to the amount of monthly rent, Landlord will provide written notice to the Tenant including any changes to the terms or conditions of the Lease.

Tenant and Landlord agree that any notice by one party to the other must be sent as follows:

If by Tenant to Landlord;

7900 Lindbergh Blvd, Ste 4400, Philadelphia, PA 19153

If by Landlord to Tenant mailed first class to the leased premises.

5


Tenant Initials



20.   ABANDONED PROPERTY

In accordance with Section 505.1(b) of the Pennsylvania Landlord and Tenant Act, upon Tenant's relinquishment of possession and the acceptance of possession of the real property by Landlord, Tenant shall have ten days to contact Landlord regarding Tenant's intent to remove any personal property remaining on the premises. If the intent is conveyed to the Landlord, the personal property shall be retained by the Landlord at a site of our choosing for thirty days. If no communication is made to Landlord within ten days, the property may be disposed of at the end of the ten days, at Landlord's discretion.

Notice: Tenant shall be required to pay all costs related to the removal or storage of property retrieved by Tenant after ten days. If notice is given to the Landlord and the property is not removed by Tenant within thirty days, it may be disposed of at Landlord's discretion.

21.   NOTICE OF TENANTS' EXTENDED ABSENCE

Tenant shall notify the Landlord in writing no later than the 1st day of such absence of any anticipated absence from the rental unit of the Tenants for more than seven (7) days. Failure to give such notice shall be considered as abandonment of the rental property and shall be grounds for the termination of this agreement. If Tenant does not provide written notice to Landlord of extended absence, Tenant will be liable for damages that occur to the rental unit during the period of absence.

22.   OTHER AGREEMENTS BETWEEN LANDLORD AND TENANT

Landlord and Tenant agree that the additional agreements marked with a check mark are part of this lease agreement.

| Yes | ✓ | No |   | Rules and Regulations |
| Yes |   | No | ✓ | Pet Agreement |
| Yes | ✓ | No |   | No Pet Agreement |
| Yes | ✓ | No |   | Consumer Notice |
| Yes | ✓ | No |   | Credit Application |
| Yes | ✓ | No |   | Insurance Addendum |
| Yes | ✓ | No |   | Smoke Free Addendum |
| Yes | ✓ | No |   | Lead Based Paint |
| Yes | ✓ | No |   | Lock Out Addendum |
| Yes | ✓ | No |   | Mold Addendum |
| Yes | ✓ | No |   | Bed Bug Addendum |
| Yes | ✓ | No |   | Water Sewer Addendum |
| Yes |   | No | ✓ | Co-Signer/Guarantor Agreement |

In the opinion of the Office of the Attorney General, a pre-approved consumer contract meets the Test of Readability under 73 P.S. Section 2205 of the Plain Language Consumer Contract Act. Pre-approval of a consumer contract by the Office of Attorney General only means that simple, understandable and easily readable language is used. It is not an approval of the contents or legality of the contract.

By signing this lease agreement, each Tenant agrees that the Tenant has read and understands all of the agreements in this lease.

DATE SIGNED BY LANDLORD:

LANDLORD

DATE SIGNED BY TENANT(S):

TENANT                                    TENANT

TENANT                                    TENANT

6



10/11/2022


Information for Good.

JEFFREY J. HOREBE

Dear JEFFREY J. HOREBE,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documentation, we took one or more of the following action(s):

1. Updated your credit report based on the information you provided; OR
2. Determined that the information you disputed either does not appear on your credit file or already shows the requested status; OR
3. Determined that the data furnisher had previously verified the reported information. If any of the items you disputed were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
4. Asked the data furnisher reporting the information you disputed to do all of the following:
    - Review relevant information we sent them, including any provided documents
    - Investigate your dispute and verify whether the information they report is accurate
    - Provide us a response to your dispute and update any other information
    - Update their records and systems, if necessary;

Should you wish to receive the above description of the procedures we used to investigate your dispute in a separate communication for your records, please contact TransUnion.

Your dispute is important. In the pages that follow, you will see your detailed investigation results, including the name and contact details of the source of the information. Please review the results carefully. To view a full copy of your credit report and for more information about how to read your credit report, please visit www.transunion.com/fullreport.

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation appears in the gray box, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of **Your Investigation Results.**

# Your Investigation Results

**INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED:** The disputed item(s) was verified as accurate; however, other information has also changed.

**IQ DATA INT'L INC #** ▊▊▊▊ **\*\*\*** ( PO BOX 39, BOTHELL, WA 98041, (888) 248-2509 )

We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**; however, we updated: **Date Updated**. Here is how this account appears on your credit report following our investigation.

| | | | | | |
|---|---|---|---|---|---|
| Placed for collection: | 12/17/2019 | Balance: | $3,085 | Pay Status: | >In Collection< |
| Responsibility: | Individual Account | Date Updated: | 10/09/2022 | | |
| Account Type: | Open Account | Original Amount: | $2,633 | | |
| Loan Type: | COLLECTION AGENCY/ATTORNEY | Original Creditor: | INTERNATIONAL CITY HOLDINGS P (Rental/Leasing) | | |
| | | Past Due: | >$3,085< | | |

Remarks: ACCT INFO DISPUTED BY CONSUMR; >PLACED FOR COLLECTION<

Estimated month and year that this item will be removed: 10/2026



**Welcome to your Dispute Results.**

(s) and/or other request(s) you recently submitted is now complete. If an item you disputed is not in the list of
curing in your credit file or it already reflected the requested status at the time of our reinvestigation.
of information routinely. We update our records as soon as we receive the updated information.
are sending you this credit report. Before contacting us, please review this report carefully. If you disagree with an
s disputes generally by sending your dispute to the furnisher of the information or to the vendor who collected the

File Number:
Date Issued: 10/20/2022

Page 5 of 6

## Your Investigation Results

**INVESTIGATION RESULTS - VERIFIED AND UPDATED:** The disputed item(s) was verified as
belonging to you and information has changed or been updated to reflect recent activity.

**IQ DATA INT'L INC #**              ** ( PO BOX 39, BOTHELL, WA 98041, (888) 248-2509 )
We investigated this item, verified it belongs to you, and updated: Date **Updated.** Here is how this item
appears on your credit report following our investigation.

| | | | |
|---|---|---|---|
| Placed for collection: 12/17/2019 | Balance: | $3,085 | Pay Status: >In Collection< |
| Responsibility: Individual Account | Date Updated: 10/19/2022 | | |
| Account Type: Open Account | Original Amount: | $2,633 | |
| Loan Type: COLLECTION AGENCY/ATTORNEY | Original Creditor: | INTERNATIONAL CITY HOLDINGS P (Rental/Leasing) | |
| | Past Due: | >$3,085< | |

Remarks: ACCT INFO DISPUTED BY CONSUMR; >PLACED FOR COLLECTION<
Estimated month and year that this item will be removed: 10/2026

PO Box 9701
Allen, TX 75013

██████
0XXX0703  ████████████████████████████  C02 P0070XX
████████

████████████████████████████



# Your Dispute Results

Report # ██████████ or Nov 15, 2022



# Hi, Jeffrey J. Welcome to your Dispute Results.

Our reinvestigation of the dispute(s) and/or other request(s) you recently submitted is now complete. If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

In response to your recent request, we are sending you this credit report. Before contacting us, please review this report carefully. If you disagree with an item, you may dispute it. We will process disputes generally by sending your dispute to the furnisher of the information or to the vendor who collected the information from a public record. If we were able to make changes to your credit report based on information you provided, or if you requested the addition of a statement, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to; review all information we provide them about your dispute; verify the accuracy of the information, provide us a response to your dispute, and update their records and systems as necessary.

# How to Read Your Results

**Deleted** - This item was removed from your credit report. **Remains** - The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. **Updated** (Your results will indicate which one of the following applies.) – a) The information you disputed has been updated. Please review your report for the details. b) The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details. c) Information on this item has been updated. Please review your report for the details. **Verified and Updated** - The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated. Please review your report for the details. **Processed** - This item was either updated or deleted; Please review your report for the details.

## Here are your results

### Credit items
IQ DATA INTERNATIONAL ██████████ Outcome: Verified and Updated - The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated. Please review your report for the details.



## Dispute Results (Continued)

### Before Dispute

**IQ DATA INTERNATIONAL** Partial Acct #▬▬▬

1010 SE EVERETT MALL WAY 100 EVERETT WA 98208; (888) 248 2509

**Status (Dec 2019)** Collection account. $3,107 past due as of Nov 2022.



| Date opened | Terms | Recent balance |
|---|---|---|
| Dec 2019 | 1 Months | $3,107 as of Nov 2022 |

**Address ID #**
0039507249

**Monthly payment**
Not reported

This account is scheduled to continue on record until Aug 2026.

**Original creditor**
INTERNATIONAL CITY HOLDINGS P

**Credit limit or original amount**
$2,633

**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)

**Type**
Collection

**High balance**
Not reported

**Responsibility**
Individual

This item was updated from our processing of your dispute in Oct 2022.

**Payment history: Mar 2020 - Nov 2022**

|      | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2022 | C | C | C | C | C | C | C | C | C | C | C |   |
| 2021 | C | ND | C | C | C | C | C | C | C | C | C | C |
| 2020 |   |   | C | C | C | C | C | C | C | C | C | C |

**Comment History**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).| Oct 2022 - Mar 2022 | Jan 2022 - Mar 2021

|  | Oct22 | Sep22 | Aug22 | Jul22 | Jun22 | May22 | Apr22 | Mar22 |
|---|---|---|---|---|---|---|---|---|
| Account Balance | $3,101 | $3,085 | $3,073 | $3,061 | $3,046 | $3,031 | $3,022 | $3,007 |
| Date Payment Received | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Scheduled Payment Amount | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Actual Amount Paid | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |

The original amount of this account was $2,633

### After Dispute

**IQ DATA INTERNATIONAL** Partial Acct #▬▬▬

1010 SE EVERETT MALL WAY 100 EVERETT WA 98208; (888) 248 2509

**Status (Dec 2019)** Collection account. $3,107 past due as of Nov 2022.



| Date opened | Terms | Recent balance |
|---|---|---|
| Dec 2019 | 1 Months | $3,107 as of Nov 2022 |

**Address ID #**
0039507249

**Monthly payment**
Not reported

This account is scheduled to continue on record until Aug 2026.

**Original creditor**
INTERNATIONAL CITY HOLDINGS P

**Credit limit or original amount**
$2,633

**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

**Type**
Collection

**High balance**
Not reported

**Responsibility**
Individual

This item was updated from our processing of your dispute in Nov 2022.

**Payment history: Mar 2020 - Nov 2022**

|      | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2022 | C | C | C | C | C | C | C | C | C | C | C |   |
| 2021 | C | ND | C | C | C | C | C | C | C | C | C | C |
| 2020 |   |   | C | C | C | C | C | C | C | C | C | C |

**Comment History**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).| Oct 2022 - Mar 2022 | Jan 2022 - Mar 2021

|  | Oct22 | Sep22 | Aug22 | Jul22 | Jun22 | May22 | Apr22 | Mar22 |
|---|---|---|---|---|---|---|---|---|
| Account Balance | $3,101 | $3,085 | $3,073 | $3,061 | $3,046 | $3,031 | $3,022 | $3,007 |
| Date Payment Received | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Scheduled Payment Amount | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Actual Amount Paid | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |

The original amount of this account was $2,633

If the reinvestigation does not resolve your dispute, you have the right to add a statement of up to 100 words to your file disputing the accuracy or completeness of the information.

If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you. You may contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly. You may provide us additional information or documents about your dispute to help us resolve it by visiting www.experian.com/upload. You may also mail your information to Experian. P.O. Box 9701, Allen, Texas 75013.

You may file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office. If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement, you may request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland or New York), or within the last year for any non-employment purpose under the California Investigative Consumer Reporting Agencies Act. If you send a request to have your results sent to past



PO Box 9701
Allen, TX 75013



JEFFREY J HOREBE
927 RIDGE AVE
DARBY PA 19023-1619



# Your Dispute Results

Report # ████████ or **Feb 04, 2023**

# Hi, Jeffrey J. Welcome to your Dispute Results.

Our reinvestigation of the dispute(s) and/or other request(s) you recently submitted is now complete. If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

In response to your recent request, we are sending you this credit report. Before contacting us, please review this report carefully. If you disagree with an item, you may dispute it. We will process disputes generally by sending your dispute to the furnisher of the information or to the vendor who collected the information from a public record. If we were able to make changes to your credit report based on information you provided, or if you requested the addition of a statement, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

# How to Read Your Results

**Deleted** - This item was removed from your credit report. **Remains** - The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. **Updated** (Your results will indicate which one of the following applies.) – a) The information you disputed has been updated. Please review your report for the details. b) The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details. c) Information on this item has been updated. Please review your report for the details. **Verified and Updated** - The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated. Please review your report for the details. **Processed** - This item was either updated or deleted; Please review your report for the details.

## Here are your results

### Credit items

This item was not changed as a result of our processing ████████

**IQ DATA INTERNATIONAL** IQD0AJH1348594445 Outcome: Updated - Information on this item has been updated. Please review your report for the details.

7031-02-00-0000278-0008-0001840



**Dispute Results** (Continued)

**Before Dispute**

## IQ DATA INTERNATIONAL Partial Acct #
1010 SE EVERETT MALL WAY 100 EVERETT WA 98208; (888) 248 2509

**Status (Dec 2019)** Collection account.
$3,134 past due as of Jan 2023.

| | |
|---|---|
| **Date opened** Dec 2019 | **Terms** 1 Months |
| **Address ID #** | **Monthly payment** Not reported |
| **Original creditor** INTERNATIONAL CITY HOLDINGS P | **Credit limit or original amount** $2,633 |
| **Type** Collection | **High balance** Not reported |
| **Responsibility** Individual | |

**Recent balance**
$3,134 as of Jan 2023

This account is scheduled to continue on record until Aug 2026.

**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

This item was updated from our processing of your dispute in Nov 2022.

**Payment history: Mar 2020 - Jan 2023**

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | C | | | | | | | | | | | |
| 2022 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2021 | ND | C | C | C | C | C | C | C | C | C | C | C |
| 2020 | | | C | C | C | C | C | C | C | C | C | C |

**Comment History**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act). | Dec 2022 - Mar 2022 | Jan 2022 - Mar 2021

| | Dec22 | Nov22 | Oct22 | Sep22 | Aug22 | Jul22 | Jun22 | May22 |
|---|---|---|---|---|---|---|---|---|
| Account Balance | $3,128 | $3,110 | $3,101 | $3,085 | $3,073 | $3,061 | $3,046 | $3,031 |
| Date Payment Received | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Scheduled Payment Amount | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Actual Amount Paid | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |

*The original amount of this account was $2,633*

7031-02-00-0000278-0006-0001840

## Dispute Results (Continued)

## After Dispute

**IQ DATA INTERNATIONAL** Partial Acct #
1010 SE EVERETT MALL WAY 100 EVERETT WA 98208; (888) 248 2500

**Status (Dec 2019)** Collection account.
$3,140 past due as of Jan 2023.

| Date opened | Terms | Recent balance |
| --- | --- | --- |
| Dec 2019 | 1 Months | $3,140 as of Jan 2023 |

**Address ID #**
0630435784

**Monthly payment**
Not reported

**Original creditor**
INTERNATIONAL CITY
HOLDINGS P

**Credit limit or original amount**
$2,633

**Type**
Collection

**High balance**
Not reported

**Responsibility**
Individual

**This account is** scheduled to continue on record until Aug 2026.

**Comment**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

This item was updated from our processing of your dispute in Jan 2023.

**Payment history: Mar 2020 - Jan 2023**

|  | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 2023 | C |  |  |  |  |  |  |  |  |  |  |  |
| 2022 | C | C | C | C | C | C | C | C | C | C | C | C |
| 2021 | C | ND | C | C | C | C | C | C | C | C | C | C |
| 2020 |  |  | C | C | C | C | C | C | C | C | C | C |

**Comment History**
Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).| Dec 2022 - Mar 2022 | Jan 2022 - Mar 2021

|  | Dec22 | Nov22 | Oct22 | Sep22 | Aug22 | Jul22 | Jun22 | Jun22 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Account Balance | $3,128 | $3,110 | $3,101 | $3,085 | $3,073 | $3,061 | $3,046 | $3,037 |
| Date Payment Received | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Scheduled Payment Amount | No Data | No Data | No Data | No Data | No Data | No Data | No Data | No Data |
| Actual Amount Paid | No Data | No Data | No Data | No Data | No Data | No Data | No Data | |

*The original amount of this account was $2,633*

If the reinvestigation does not resolve your dispute, you have the right to add a statement of up to 100 words to your file disputing the accuracy or completeness of the information.

If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you. You may contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly. You may provide us additional information or documents about your dispute to help us resolve it by visiting www.experian.com/upload. You may also mail your information to Experian, P.O. Box 9701, Allen, Texas 75013.

You may file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office. If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement, you may request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland or New York), or within the last year for any non-employment purpose under the California Investigative Consumer Reporting Agencies Act. If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address. In the event an organization is not specifically designated, we will generally default to sending only to companies that have requested your credit information as a result of an action you took, such as applying for credit, insurance, employment or apartment rental. If you request to have your results sent to past recipients of your investigative consumer report, you have the right to designate which entities you wish to receive the updated report and which entities you do not wish to receive the update. If interested, you may also request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of information. For frequently asked questions about your credit report, please visit experian.com/consumerfaqs.

Medical Information
By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e. "Cancer Center") that reports your payment history to us. If so, these names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

# Payment History Legend

| | | |
| --- | --- | --- |
| **OK** Current / Terms met | **150** Past due 150 Days | **VS** Voluntarily surrendered | **D** Defaulted on contract |
| **30** Past due 30 Days | **180** Past due 180 Days | **R** Repossession | **C** Collection |
| **60** Past due 60 Days | **CRD** Creditor received deed | **PBC** Paid by creditor | **CO** Charge off |
| **90** Past due 90 Days | **FS** Foreclosure proceedings started | **EC** Insurance claim | **CLS** Closed |
| **120** Past due 120 Days | **F** Foreclosure | **G** Claim filed with government | **ND** No data for this period |

# ⚠ Your Potentially Negative Account Activity

The most common items in this section are late payments, accounts that have been charged off or sent to collection, accounts settled for less than full value, and items that may need closer attention, such as transferred accounts.

JEFFREY J HOREBE   Report #                    for 02/04/23



# EQUIFAX

## CREDIT FILE : November 28, 2022

## Confirmation #

Dear JEFFREY J HOREBE:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete. Here are a few things to know about the process:

### Were changes made to my credit report and what actions were taken?

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

### How do I know that all of this is happening?

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

### What should I do if I do not agree with the results of the investigation?

You have a few options:

- You may add a statement of up to 100 words (200 words for Maine residents) to your credit report. If you provide a consumer statement that contains

(Continued On Next Page)

P.O. Box 105518
Atlanta, GA 30348

00001552- DISC
JEFFREY J HOREBE

**What else should I know?**

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at https://help.equifax.com/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

**How should I read my dispute results?**

To better assist you with understanding the results of your dispute, please review the information below:

- If an item states **"Deleted"**, we have removed it from your credit report and taken steps so it does not reappear.
- If an item states **"Verified as Reported"**, the reporting company has certifed it is reporting accurately.
- If an item states **"Updated"**, we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

| The Results Of Our Reinvestigation |
|---|

| Collection Agency Information | (This section includes accounts that have been placed for collection with a collection agency.) |
|---|---|

>>> *We have researched the collection account. Account # -* █████ *The results are:* WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *STATUS DATE *BALANCE DATE. If you have additional questions about this item please contact: *I.Q. DATA, PO BOX 39, BOTHELL, WA 98041 Phone: (888) 313-9662*

**I.Q. DATA INTERNATIONAL, INC** *PO BOX 39 BOTHELL WA 98041 : (888) 313-9662*

| Account Number | | Date Reported | Date Assigned | Creditor Class | | Client Name | | Original Amount |
|---|---|---|---|---|---|---|---|---|
| | | 11/2022 | 12/2019 | Rental/Leasing | | I.Q. DATA INTERNATIONAL, INC | | $ 2,633 |
| Status Date | Status | Date of 1st Delinquency | | Balance Date | Balance Amount | Last Payment Date | Whose Account | |

(Continued On Next Page)

| 11/2022 | Unpaid | 11/2019 | 11/2022 | $ 3,110 | | Individual Account |

ADDITIONAL INFORMATION:

*Consumer Disputes This Account Information*

(Continued On Next Page)